**Michael Ray DOLES, Plaintiff,**

v.

**Deborah Denise DOLES, Defendant–Appellant,**

v.

**Edward DOLES and Ethel Mae Doles, Intervenors–Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 10, 1992.

Application for Permission to Appeal Denied by Supreme Court Jan. 25, 1993.

Roger Staton, Jackson, for defendant-appellant.

Middlebrooks & Gray, P.A., Jackson, for intervenors-appellees.

CRAWFORD, Judge.

This is a child custody case. Michael Ray Doles (Father) and Deborah Denise Doles, now Parks, (Mother) were divorced by decree entered July 11, 1988. The decree incorporated a consent order which had previously been entered on June 23, 1988, awarding temporary custody of the parties' two minor children to Ed Doles, paternal grandfather, and wife Ethel Mae Doles who were allowed to intervene in the cause. On February 14, 1991, Mother filed a petition to change custody. After an evidentiary hearing on December 3, 1991, the chancellor entered an order on January 27, 1992, denying the petition to change custody. Mother has appealed and the only issue is whether the trial court erred in denying her motion to change custody of the two minor children.

The two children, twin girls, Crystal and Jessica, were born April 1, 1986. When Mother and Father separated in August, 1987, they began living with the intervenors, Ed and Ethel Doles.

Mother testified that she has been married to Kenneth Parks for about a year and three months. In 1988 and 1989 she moved her residence a total of nine times. She is presently employed as a school bus driver in Madison County and works from 7:00 to 8:30 a.m. and 3:00 to 4:30 p.m. Her take-home pay is about $276.00 every two weeks. She also works from 9:00 until 2:00 at the Flower Patch and earns $190.00 every two weeks. Her husband is employed at Kroger but she does not know the amount of his salary. She has had several changes of employment from 1988 to the date of trial. In January of 1988, she entered into an agreement which allowed Mr. and Mrs. Edward Doles to have custody of the twins because she was unable to care for them at that time. She considered it a temporary move in the children's best interest until she would be able to better take care of them. The children presently attend kindergarten at the Hornsby Elementary School.

Mother related that she has visitation every two weeks from 4 p.m. on Saturday until 8 p.m. on Sunday, and that she must go to the Doles' home to pick them up and return them. She attends church regularly at the Faith Chapel Church and when she

has custody of the children they attend with her and also attend Sunday School. She and her husband reside in a two bedroom mobile home in a mobile home park. She considers it comfortable and adequate to care for the children. She further testified that she does not drink, although she and her husband both smoke, they do so outside and not in a confined area with the children.

On cross-examination, Mother admitted to three or four bad check charges, but stated that she paid the checks and the court costs and the matter was dismissed. She also admitted that she filed several complaints against various men, including a former husband, primarily for altercations in which she was harassed. She also admitted that the complaints included two complaints against her husband, Kenneth Parks, before they were married.

She testified that if she has custody, the children could ride the school bus in the afternoon and come home with her. During the summer she would not be driving the school bus and probably would not work at her other job in order to take care of the children. In any event, her sister could provide any child care that might be needed.

She admitted that her mother and father adopted a child of hers and that that child is presently living with her mother and father along with her sister and her sister's two children. She also testified that since she learned where the children were going to school she has talked to the school principal.

Since her marriage to Mr. Parks in September, 1990, she has filed no complaints against anyone with the Madison County Sheriff's Department. She has had no complaints of any kind filed against her. She admitted that Mr. Parks filed a Chapter 13 bankruptcy proceeding, and that he had consulted an attorney about this before they were married. She stated that since she and Mr. Parks have been married, they get along well. Their previous difficulties were caused by his ex-wife and since they have married the ex-wife does not bother them.

Mother testified that the Doles do not keep her informed of matters concerning the children's school, their health and other matters relating to their activities.

Kenneth Douglas Parks testified that he resides at 145 Old Pinson Road, is married to Debbie Denise Parks and works at Kroger. He stated that he worked for Kroger for six years, then left for another job for two years and then went back to Kroger and has been there for almost two years at this time. He earns $7.01 per hour, and works approximately forty hours per week. He admitted that he filed a Chapter 13 bankruptcy proceeding and is presently paying $208.00 in the plan. He does not have a criminal record, he does not drink and smokes about a pack of cigarettes a day. He stated that if the twins are there, he does not smoke in the house. He testified that since he and Ms. Parks have been married they have been getting along very well and haven't had any problems. He loves the twins as if they were his own children and tries to be a good father to them. He testified that Ms. Parks loves her children very much and is a good mother and is able to take care of them.

On cross examination, he testified that he does not remember complaints being made to the sheriff's office by Ms. Parks before they were married, nor does he recall an officer coming to talk with him about any such complaint.

Ethel Mae Doles testified that she resides at Route 1, Box 438, Bolivar, Tennessee and is married to the paternal grandfather of the twins, Jessica and Crystal. She testified that they have had the children since August 5, 1987, and have been financially supporting them since that time. She admitted that the mother has exercised her visitation rights for the last year or so although she did not do so at first. She admitted also that she has not had any problems with the mother concerning the visitation. She testified that she did tell the mother where the children were going to school and keeps the mother informed concerning the children's condition and any events that affect the children. She stated

that the children are doing very well in school.

Ms. Doles testified that in August of 1990, Ms. Parks called her and wanted to swap weekend visitation because she and Kenny were having problems. A month later, Ms. Parks married Kenneth Parks. Ms. Doles further testified that she and her husband have adequate facilities to take care of the children and that they still want the children to live in their home. She stated that she and her husband believe they are more financially able and more stable to retain custody of the children and to give them a good home. She further testified that she did not object to Ms. Parks having custody of the children if Ms. Parks demonstrated financial ability and emotional ability to take care of the children, but that at this particular time she did not feel secure in that knowledge.

Ms. Doles admitted that she and Mr. Doles lived together without the benefit of marriage until they were married September 12, 1987, after they obtained custody of the children. She admitted also that her son, the children's father, lived with another woman without the benefit of marriage since his divorce and she admitted that during the time he was living with the woman, she and her husband allowed the twins to have overnight visits with their father.

Ms. Doles also admitted on cross examination that she doesn't volunteer any information to Ms. Parks, but she will answer when she is asked about the children. She testified that she is an assistant manager at the Dollar General Store and her hours vary. While she and Mr. Doles are both working, the children stay with a baby sitter. She admitted that she also smokes and that she smokes around the girls and also smokes in the car. She admitted that she has never visited in the Parks' home and knows nothing about the living accommodations.

Mark Ray testified that he is a deputy sheriff with the Madison County Sheriff's Department and on October 21, 1989, investigated a complaint filed by Deborah Doles. He stated that the complaint was that Kenneth Parks, her boyfriend, became upset with her and threw a coke bottle at the car windshield, although it did not break the windshield. Deborah Doles told him that Kenneth Parks threatened to cut her tires and put something in her gas tank. To the best of his memory, all he did was make a report, and no on-the-scene investigation was conducted. He testified on cross examination that he did not see Ms. Doles as this was a telephone call complaint. He admitted that he did not know for sure that the lady who called was Deborah Doles.

Tom Allen testified that he is employed with Allen Investigations and was hired by Edward Doles to do an investigation of Deborah Doles during the period from May, 1990, to June of 1990. During that time, on one occasion, he observed a brief period of time when the children were playing in front of an apartment located in the South Side Apartments in Jackson. He observed the children playing unattended for about 30 minutes. He stated that when he first arrived, the apartment door was open and the children were playing in front of the apartment. Their mother, Ms. Doles, came out, went back inside and closed the door. He did not observe anyone outside checking on the children until about 28 minutes later when the mother came back outside. He also testified that he observed the children riding in vehicles and they were not in any type of child restraint or seat belt. He thought this occurred on four separate occasions when the mother picked the children up for visitation. He also testified that on one occasion he followed Mr. and Mrs. Parks taking the children back to the Doles' home and that Kenny Parks was driving at a speed of 60 to 70 m.p.h. on Walnut Grove Road, which he described as a curvy, dangerous road. On cross examination he admitted that he could not positively identify the driver as Mr. Parks and he really did not know who was driving.

Kenneth Parks was called back as a witness on rebuttal and testified that he had never driven on Walnut Grove Road at such a high rate of speed. He also testified that the children were in child seats

when they were transported back and forth for visitation. On one occasion he did not have the child seats when he picked them up. On this occasion they had seat belts on, but he got a ticket for lack of child seats.

Also called in rebuttal was Ms. Bertie Skutter, Ms. Parks' mother. She resides in the South Side Apartments and in response to Mr. Allen's testimony concerning the children playing, she testified that she lived in a ground floor apartment.

On cross examination she denied an alleged conversation with Ms. Ethel Doles concerning the fact that her daughter was going to file for a change of custody. She also denied that her daughter has left the children unattended when they were in her custody. She testified that her daughter is a very good mother and, although her daughter has had trouble in the past, she has changed.

The Department of Human Services reports were to the effect that both custodial adversaries were acceptable.

At the conclusion of the evidentiary hearing, the trial court stated its findings from the bench and found that at the present time there has not been a sufficient change of circumstances and that it is in the best interest of the children that they remain in their present home.

While the common law rule that a natural father is entitled to the custody of his child is no longer controlling in a contest between the parents, the right of the parent is superior in a custody dispute between a parent and a third party. *Stubblefield v. State ex rel. Fjelstad,* 171 Tenn. 580, 587–88, 106 S.W.2d 558, 561 (1937); *Dunavant v. Dunavant,* 31 Tenn.App. 634, 645, 219 S.W.2d 910, 914 (1949).

In *Stubblefield v. State, supra,* the court said:

As stated in *Hernandez v. Thomas,* 50 Fla. 522, 39 So. 641, 645, 2 L.R.A. (N.S.) 203, 111 Am.St.Rep. 137, 7 Ann.Cas. 446: "In accordance with the prevailing rule in the American courts, that in awarding the custody of children the paramount consideration is the welfare of the child, rather than the technical legal right of the parent. While this is true, yet the court should not lightly and without good cause invade the natural right of the parent to the custody, care, and control of his infant child."

\*    \*    \*    \*    \*    \*

This proposition of law was likewise clearly stated in the case of *State ex rel. v. Martin,* 95 Minn. 121, 103 N.W. 888: "The right of a parent to the care and custody of his minor child is, both at common law and under the statute, paramount and superior to the right of a third person. The presumption is that the parent is a fit and suitable person to be entrusted with the care of his child, and the burden is upon him who asserts the contrary to prove it by satisfactory evidence."

We quote from 46 C.J.S., pp. 1228–1230: "A parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons and this rule applies although such others are much attached to the child and the child is attached to them, and prefers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, or even though they are better able to afford the child material advantages."

It is further stated in above authority that these rules have been applied in favor of father or mother against grandparents, aunts, uncles, maternal or paternal.

In *Clarke v. Lyon,* 82 Neb. 625, 631, 118 N.W. 472, 474, 20 L.R.A. (N.S.) 171, it is said:

"The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide. The statute declares and nature provides that the right shall be in the parent, unless the parent be affirmatively unfit."

We need not multiply authorities. The foregoing are typical of the strong current of judicial thought in our country. 171 Tenn. at 587–89, 106 S.W.2d at 560–61.

■ The preference for natural parents must, of course, be subordinate to the best interest of the minor child. *Smith v. Smith*, 188 Tenn. 430, 220 S.W.2d 627 (1949).

■ In a choice between a mother of young children and third parties, even grandparents, equal fitness by the parties cannot overcome the law's preference for the mother. Our Supreme Court stated in *In Re: Knott*, 138 Tenn. 349, 197 S.W. 1097 (1917):

> The relations which exist between the parent and child are sacred ones and have their foundation in nature, and the affection existing between them is stronger and more potent, and affords a greater protection to the child, than any relation which could be created by association merely. The right to the society of the child exists in its parents; the right to rear it, to its custody, to its tutorage, the shaping of its destiny, and all of the consequences that naturally follow from the relationship are inherently in the natural parents,....

138 Tenn. at 355, 197 S.W. at 1098.

■ In the case at bar, it is apparent that previously Mother was unable to properly care for the children and the best interest of the children demanded that they be placed where they could receive proper care. It is also apparent that for some time period thereafter Mother was in an unstable position and environment and not equipped to take care of the children. Mother now presents to the Court, however, that she has stabilized her life, her marriage and her employment, and that she has the resources to properly look after her children. After hearing all of the testimony, the trial court obviously was not convinced that Mother's rehabilitation had been complete to the extent that the best interest of the children would be served by returning custody to her, although the court did increase her visitation.

■ Since this case was tried by the court sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings we must affirm, absent error of law. T.R.A.P. 13(d). This presumption applies in child custody cases. *Hass v. Knighton*, 676 S.W.2d 554 (Tenn.1984).

Surprisingly, neither the paternal grandfather nor the father testified at the evidentiary hearing. After a careful review of the record, we conclude that the evidence preponderates against the chancellor's findings. There is no doubt that Mother previously was not a proper custodial parent. However, the proof in this record indicates that Mother now has a stable home-life and is in a position to care for children. The record does not indicate that the living arrangements with the grandfather and step-grandmother provide the children with a better environment. The children need and deserve a stable home environment and preferably in a traditional two-parent home. Mother has demonstrated that she is now able to provide such an environment.

Accordingly, the order of the trial court is reversed and custody of the two minor children is awarded to Mother. The case is remanded to the trial court for further proceedings to determine the implementation of the change of custody. We recognize that the children are now attending school and a change of custody will probably necessitate a school move and it is the intention of this Court to minimize the disruption in the lives of these two innocent children.

Costs of the appeal are assessed against the appellees.

HIGHERS and FARMER, JJ., concur.