# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 5, 2001 Session

## LYDIA JANE BREWSTER v. DAN NATHANIEL BREWSTER

**A Direct Appeal from the Chancery Court for Stewart County**
**No. 98-8-257      The Honorable Leonard Martin, Judge**

_____

### No. M2000-01174-COA-R3-CV - Filed April 23, 2001

_____

This appeal involves the trial court's denial of the father's visitation after entry of a final decree of divorce granting the parents joint custody of the two minor children. The father filed a motion to alter and amend the final decree of divorce and for visitation. The mother opposed visitation by the father because of alleged sexual abuse of their daughter. The trial court denied father visitation. The father has appealed. We amend the final decree, affirm the denial of visitation, and remand the case for further proceedings.

**Tenn.R.App.P. 3; Appeal as of Right; Decree of the Chancery Court Affirmed as Modified and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Carrie W. Kersh, Clarksville, For Appellant, Dan Nathaniel Brewster

Deborah S. Evans, Clarksville, For Appellee, Lydia Jane Brewster

### OPINION

Lydia Jane Brewster ("Wife" or "Mother") and Dan Nathaniel Brewster ("Husband" or "Father") were married on July 25, 1984. There were two children born of parties' marriage, Danielle Nicole Brewster, born January 13, 1990, and Dan Nathaniel Brewster, Jr., born April 13, 1994. On July 7, 1997, Wife filed a complaint for absolute divorce alleging grounds of irreconcilable differences and inappropriate marital conduct. Husband filed an answer and counter-complaint alleging irreconcilable differences and inappropriate marital conduct on the part of Wife. Husband was charged with child rape based on allegations of sexual abuse of his daughter and a jury trial was held in December of 1998, but ending in a deadlocked jury. On February 11, 1999, Husband filed a motion for visitation. An agreed order was entered on August 13, 1999, which gave temporary custody of the two minor children to Wife and denied visitation to Husband until the conclusion of the second trial on the charges of sexual abuse. A hearing on the parties divorce was

held on December 8, 1999, after which a final decree of divorce was entered granting the divorce to Wife on the ground of irreconcilable differences and granting both parties joint custody of the two minor children. However, the decree provided that Husband was denied any visitation "until a time that it is determined by this Court that no irreparable harm will be caused to the children if visitation were to be allowed."

Husband filed two motions to alter or amend the final decree, and on March 29, 2000, Husband filed another motion for visitation stating that he has not been allowed to see his children for more than one year and nine months. He requested that initial visitation with his children be supervised due to the length of time that his children had not seen him. On April 24, 2000, a hearing was held on Husband's motion for visitation and motion to alter or amend the final decree and on Wife's motion for attorneys fees. Subsequently, the trial court entered an order denying all motions. Husband has appealed raising one issue, whether the trial court erred by refusing to grant him visitation with his children. Wife also raises for review the issue of whether the trial court erred in granting joint custody when Father has no visitation rights and these parents clearly cannot cooperate with each other.

In lieu of a transcript of the evidence for the divorce trial on December 8, 1999 and the motion hearings on April 24, 2000, a statement of the evidence was filed and approved by the trial court. The statement detailed the testimony of Mother, Dr. Timothy Roads (Danielle's treating physician), Dr. Phyleen Stewart-Ramage, (a licensed psychiatrist), and Dr. Kimberly Stahlford, (a licensed psychiatrist) at the final divorce hearing on December 8, 1999; and the testimony of Ann Brewster, Father's mother, Mother, Father, and Dr. Elizabeth Pritchett (treating Danielle in place of Dr. Stahlford on maternity leave) at the hearing on the motion for visitation held April 24, 2000.

Before considering the issues presented by the parties, we must address the final decree of divorce. The final decree states that the parties stipulated to the grounds alleged in the complaint and counter-complaint. These grounds are irreconcilable differences and inappropriate marital conduct. The decree then provides that the parties have divided their personal property "without the benefit of a marital dissolution agreement and as specifically set out below." Wife was thereupon "awarded an absolute divorce from the defendant on the grounds of irreconcilable differences."

Considering the final decree in its entirety, it appears that the trial court recognized that pursuant to T.C.A. § 36-5-103 (2000 Supp.), there must be a written marital dissolution agreement as a prerequisite for a divorce on the grounds of irreconcilable differences. The court specifically did not grant a divorce to the parties, but awarded the divorce to the complainant after first pointing out in the decree that the parties had stipulated to the grounds set out in the complaint and counter-complaint. Under these circumstances, it is conceivable that a clerical mistake, as provided for in Tenn.R.Civ.P. 60.01, was made in the final decree. Moreover, a review of the statement of the evidence reveals that proof was introduced of inappropriate marital conduct on the part of Husband that would support a divorce on that ground. Therefore, this Court, in the interest of judicial economy and in the exercise of its inherent power, amends the final decree of divorce to award the divorce to complainant on the ground of inappropriate marital conduct.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Father asserts that the trial court erred in denying him visitation with his minor children stating that although he was indicted and tried twice on the charges of child rape, each trial concluded with a hung jury. In March of 2000, the indictment against him was dismissed and charges expunged from his record. Father asserts that he has a fundamental right to visitation with his children, and while the trial court does have broad discretion in issues of child custody and visitation, the decision of the trial court must be within the range of acceptable alternatives.

On the other hand, Mother asserts that the trial court was not in error in denying visitation to Father, because the children's best interest must be the focus in visitation and custody disputes. She contends that visitation with Father at this time would cause irreparable harm to the children as demonstrated by the testimony of Dr. Pritchett. Dr. Pritchett testified that before Father's visitation with the children, he needed professional assistance to devise a method which would allow him to re-enter the children's lives in a way that would not cause them harm. Mother asserts that at the time of the divorce, Father had done nothing to address his or his children's psychological issues.

The custody and visitation of minor children are some of the most sensitive issues that confront a trial court in a divorce case. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Custody and visitation arrangements are within the discretion of the trial court, *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973), but trial courts must base decisions on the proof and appropriate law and principles. *Gaskill,* 936 S.W.2d at 631. In reviewing custody and visitation cases the welfare of the children involved is paramount, *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn. 1983) and the right of a non-custodial parent to reasonable visitation is clearly favored. *Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn. 1988) (citing *Weaver v. Weaver,* 37 Tenn. App. 195, 202-203, 261 S.W.2d 145, 148 (1953)). Tennessee courts have recognized that non-custodial parents have a fundamental right to visitation. T.C.A. § 36-6-301; *Suttles v. Suttles,* 478 S.W.2d at 429; *and Helson v. Cyrus,* 989 S.W.2d 704, 707 (Tenn. Ct. App. 1998). Still, the non-custodial parent's right of visitation may be limited or denied where there exists definite evidence that visitation would threaten the child. *Suttles v. Suttles,* 478 S.W.2d at 429. As recently expressed by the Middle Section of the Tennessee Court of Appeals:

> Because of the legal and psychological significance of a parent's visitation rights, persons seeking to restrict or eliminate visitation must demonstrate that there is probable cause that the child will be placed at risk if visitation is permitted. The Tennessee Supreme Court requires that this proof must be "definite," *Suttles v. Suttles,* 748 S.W.2d at 429, and Tenn. Code Ann. § 36-6-301 requires that the proof demonstrate that visitation is "likely" to endanger the child's physical or emotional health. These evidentiary standards have effectively created a presumption against severely circumscribing or denying visitation to non-custodial parents. Such

drastic measures are appropriate only when arrangements less detrimental to the parent-child relationship are not available or workable as a practical matter.

With these principles in mind, the courts have terminated or suspended visitation by a non-custodial parent only in extreme circumstances such as (1) the non-custodial parent's history of physically abusing his spouse and child, *Suttles v. Suttles,* 748 S.W.2d at 429; (2) the non-custodial parent's abandonment of the child, *Turner v. Turner,* 919 S.W.2d at 346; *Mimms v. Mimms,* 780 S.W.2d 739, 745 (Tenn. Ct. Appp 1989); or (3) conduct of the non-custodial parent that is injurious to the child's physical health, *Smith v. Smith,* No. 03A01-9603-CV-00078, 1996 WL 591181, at *4 (Tenn. Ct. App. Oct. 11, 1996)(No Tenn.R.App.P. 11 application filed). In other circumstances, the courts have stopped short of terminating or suspending visitation when less restrictive alternatives, such as supervised visitation, have been reasonably available. *E.g., Whitaker v. Whitaker,* 957 S.W.2d 834, 838-39 (Tenn. Ct. App. 1997) (disapproving unreasonably burdensome restrictions on visitation on a parent ordered to undergo counseling); *D v. K,* 917 S.W.2d at 685 (approving supervised visitation for a parent who permitted a child to play unattended in a parking lot); *Pizzillo v. Pizzillo,* 884 S.W.2d at 757 (approving supervised visitation for a non-custodial parent convicted of sexual abuse); *Crabtree v. Crabtree,* 716 S.W.2d 923, 927 (Tenn. Ct. App. 1986 ) (approving supervised visitation for a non-custodial parent charged with sexual abuse).

*Wix v. Wix,* No. M2000-00230-COA-R3-CV, 2001 WL 219700, *11 (Tenn. Ct. App. March 7, 2001).

Where there is evidence of threats and violence against a child, supervised visitation is justified until the parent has obtained counseling and treatment. *Suttles,* 748 S.W.2d at 429. (Citing *Taraboletti v. Taraboletti,* 56 Ill. App. 3d 854, 14 Ill. Dec. 350, 372 N.E.2d 155 (1978). And where the child's mental state demonstrates a fear of one parent based on real or imagined mistreatment by that parent, "...that is sufficient to persuade this court to exclude the child from the company of that parent except under proper supervision." *Crabtree v. Crabtree,* 716, S.W.2d 923, 926 (Tenn. Ct. App. 1986). Visitation decisions should not be punitive, *Turner v. Turner,* 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995)(citing *Mimms v. Mimms,* 780 S.W.2d 739, 745 (Tenn. Ct. App. 1989)). Generally, the most preferable arrangement is one which promotes the children's relationships with both the custodial and non-custodial parent. *Id.* (Citing *Rogero v. Pitt,* 759 S.W.2d 109, 112 (Tenn. 1988); and *Pizzillo v. Pizzillo,* 884 S.W.2d 749, 755 (Tenn. Ct. App. 1994)).

In *Pizzillo,* the middle section of this Court reviewed the decision of the trial court in denying a father's motion for expanded visitation with his daughter, where father had completed a

pretrial diversion program relating to claimed sexual abuse of his daughter and niece, and criminal charges were dropped against him. On appeal, the Court found that the evidence demonstrated that the father's continuing denials that he abused his daughter were not causing additional harm, and that expanding the supervised visitation would be in child's best interests in the long run. *Id.* at 757. In its reasoning the *Pizzillo* Court stated:

> Child custody and visitation disputes require the courts to focus on the welfare and best interests of the child. *Lentz v. Lentz,* 717 S.W.2d 876, 877 (Tenn.1986); *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn.1983). While the parents' respective rights and desires are secondary in these proceedings, *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn.Ct.App.1992); *Griffin v. Stone*, 834 S.W.2d 300, 302 (Tenn.Ct.App.1992), they should not be ignored. *Neely v. Neely,* 737 S.W.2d 539, 542 (Tenn.Ct.App.1987).
>
> A child's interests are well-served by a custody and visitation arrangement that promotes the development of relationships with both the custodial and the noncustodial parent. *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn.1988) (relationship with both parents); *Bryan v. Bryan*, 620 S.W.2d 85, 88 (Tenn.Ct.App.1981) (relationship with a noncustodial parent); *Dillow v. Dillow*, 575 S.W.2d 289, 291 (Tenn.Ct.App.1978) (relationship with a noncustodial parent). Thus, the courts should devise custody and visitation arrangements that interfere with each parent's relationship with his or her child as little as possible. *Taylor v. Taylor,* 849 S.W.2d 319, 331 (Tenn.1993); *Rust v. Rust*, 864 S.W.2d 52, 56 (Tenn.Ct.App.1993); *Neely v. Neely*, 737 S.W.2d at 542-43.

*Id.* at 755

In addressing the visitation issue, no consideration was given to devising a plan aimed at facilitating Father's visitation, while at the same time protecting the interests of the children. Although the Father continues to deny sexual abuse of his daughter, as did the father in *Pizzillo,* the record contains evidence to the contrary. Furthermore the record does support the fact that there exists a definite fear, whether real or imagined, by both children that their father poses a threat of harm. Although the record does not support even supervised visitation at this time, some effort should be made to repair and further the parent-child relationship between Father and the children. According to the statement of evidence, Dr. Pritchett suggested that Father needed to seek counseling and confront certain issues before therapeutic visitation could take place, and that even if Father was not guilty of sexual abuse, he needed counseling to assist him to understand the issues facing his children and a proper procedure for re-entering the children's lives. We wholeheartedly agree. Accordingly, we affirm the trial court's order denying visitation to Father. On remand, the parties and the court should develop a plan of counseling for Father and the children with the goal of facilitating Father's visitation, as appropriate, considering the children's welfare.

Wife takes issue with the trial court's order of joint custody of the two minor children asserting that where the parents are not working together, are not communicating, and where cooperation is unlikely, an order of joint custody cannot stand. Needless to say, granting joint custody to a parent that is not permitted to visit his children is quite anomalous.

"Joint custody means shared custody and shared responsibility for support." **Gray v. Gray,** 885 S.W.2d 353, 356 (Tenn.Ct.App. 1994). " Joint custody works best, if it works at all, (footnote omitted ) when both parties agree to it." **Garner v. Garner,** 773 S.W.2d 245, 248 (Tenn.Ct.App. 1989) (citing **Dodd v. Dodd,** 737 S.W.2d 286, 289-90 (Tenn.Ct.App.1987)). If the parties' conduct and the history of their dealings with each other does not support an award of joint custody with a finding that the parties are capable of effectively agreeing to the significant decisions involving their children, joint custody is not warranted. **Id.** In the instant case, it is clear that these parties cannot share parental responsibilities.

In sum, the final decree of divorce is amended to grant Mother a divorce on the ground of inappropriate marital conduct and to grant Mother sole custody of the minor children. The decree is affirmed in all other respects. The trial court's order on Father's motion denying visitation is affirmed, and the case is remanded for further proceedings consistent with this Opinion. Costs of the appeal are assessed to Father, Dan Nathaniel Brewster, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.