# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 9, 2001 Session

## PATRICIA JANE SADLER v. LAWRENCE DAVID SADLER

**Appeal from the Circuit Court for Knox County**
**No. 60167     Bill Swann, Judge**

**FILED JULY 11, 2001**

**No. E2000-02110-COA-R3-CV**

This is a post-divorce child support dispute with a series of hearings and orders stretching over a 29-month period. Lawrence David Sadler ("Father"), the obligor parent, appeals the last order entered below, in which the trial court found him in arrears and awarded Patricia Jane Sadler ("Mother") her attorney's fees of $6,262.50. Because we find that the referee's action, as approved by the trial court in the subject order, retroactively modified Father's child support obligation and erroneously found Father to be in arrears in his child support obligation, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

David L. Valone, Knoxville, Tennessee, for the appellant, Lawrence David Sadler.

No appearance for the appellee, Patricia Jane Sadler.

## OPINION

### I.

The parties were divorced in 1993.[1] Three children were born to their union: Lindsay Ann Sadler, Cassandra Lee Sadler, and Tracey Marie Sadler. Although the children's dates of birth are not reflected in the record, deposition testimony received at the last hearing below, October 6, 1999, indicates that the children were then approximately 21, 18, and 15 years old, respectively.

---

[1]The judgment of divorce and the parties' marital dissolution agreement are not in the record.

On August 7, 1997, a post-divorce, agreed order was entered below, finding that Father had accumulated a child support arrearage of $14,000.[2] The agreed order provides that effective August 1, 1997, Father would pay Mother 50% of his monthly benefits received from the Veterans Administration and the Social Security Administration.[3] This payment included the following: *$650 was designated as general child support for the parties' two remaining minor children*; $150 was designated as payment for the children's health insurance; $125 was for payment of the children's automobile insurance; and the remainder was to be applied to Father's arrearage.[4] The agreed order further provides that Father is to pay Mother $6,000 in attorney's fees once the arrearage is paid in full.

In September and November, 1997, Father filed a motion asking the court to consider Social Security payments received directly by the children as child support and thus applicable to his arrearage. Father further sought credit for overpayments on his automobile insurance obligation, which insurance, according to Father, actually cost less than the $125 he paid per month. Mother did not file any pleadings in response to Father's requests.

On March 20, 1998, a hearing was held on Father's pending motions. During the course of argument, Father's counsel at the time, Marty McDonald, advised the referee that the benefits Father was receiving had increased since the entry of the agreed order. He argued that Father's Social Security income should be treated as gross income, that the VA income should be treated as net pay, and that Father's ongoing child support obligation should be set at $1,016 per month. Wife's counsel, on the other hand, argued that both the Social Security and VA payments should be treated as net income, resulting in a child support obligation of $1,049 per month. The referee asked the parties to consult with a certified public accountant on the taxability of Father's Social Security payments. The attorneys were directed by the referee to submit the accountant's opinion to him in writing .

The referee's findings and recommendations were filed on June 15, 1998, *nunc pro tunc* March 20, 1998. The referee found that the Social Security payments received directly by the children, as well as the overpayment on the automobile insurance, should be credited against Father's arrearage. The referee further found Father's income to be $3,212 per month; however, no finding was made as to Father's ongoing child support obligation.

---

[2] The agreed order indicates that the arrearage was originally $16,000, consisting of $14,000 in unpaid general child support and $2,000 in unpaid medical expenses of the children; however, on the day of the hearing, Father tendered a check to Mother in the amount of $2,000. Thus, the balance of the arrearage carried forward as of August 7, 1997, was $14,000.

[3] It appears from later statements made by the parties' counsel that at the time of the entry of the agreed order, Father was receiving only VA benefits. He began receiving Social Security benefits in September, 1997.

[4] The record indicates that the parties' oldest child had reached the age of majority by 1997. However, it appears from the statements of the parties' counsel that the marital dissolution agreement required Father to provide for their oldest child's health and automobile insurance as well as her medical and educational expenses past the age of majority.

On June 26, 1998, the referee's findings and recommendations were confirmed by the trial court. Thereafter, on July 24, 1998, Mother filed a motion requesting the trial court "to clarify, modify, and or replace" the referee's findings and recommendations. Specifically, Mother alleged that the referee had miscalculated Father's income and that the findings and recommendations failed to address several issues, including an award of attorney's fees "as was before the Court," the present amount of child support to be paid, Father's failure to pay outstanding medical bills, and the fact that the parties' second child had recently begun driving and was now covered by the automobile insurance paid by Father. In this motion, Mother also sought an award of attorney's fees incurred in filing the motion.

A hearing was held before the referee on March 24, 1999, on Mother's motion. At this hearing, Mother argued that the referee's order should be modified to include a finding of the amount of child support owed by Father based upon his increased income. Mother argued that the child support obligation should be set at $1,049 per month. Father, on the other hand, argued that his support obligation should be set at $927. After much discussion and calculations by the parties and the referee, *the referee announced that the obligation should be set at $1,000 effective April 1, 1999*. An order was entered on April 5, 1999, to that effect.

On October 6, 1999, the referee heard argument from the parties regarding the current balance of Father's arrearage. In considering the issue of the arrearage, the parties focused upon the amount of child support owed from the March 20, 1998, hearing until April 1, 1999, the latter date being the effective date of the new child support obligation of $1,000. Mother contended that Father owed $1,049 per month for this time period, and her arrearage figures were calculated upon Father owing this amount for that period of time, despite an existing court order to the contrary. Father, who was represented by new counsel, argued that the child support obligation did not change as of the March 20, 1998, hearing, and that Father only owed $650 per month until April 1, 1999, when the obligation was increased to $1,000 per month. The ongoing child support obligation was also discussed, as the parties' second child had reached the age of majority in August, 1999, leaving only one minor child. *The referee set Father's ongoing child support obligation, effective October 1, 1999, at $685*. As to the other issues before the court, the referee instructed the parties to submit proposed findings and recommendations.

On December 27, 1999, the referee adopted, *in toto*, Mother's proposed findings and recommendations. The findings are lengthy and somewhat convoluted. What is significant for the purposes of our analysis, however, are paragraphs 5 and 11, which address Father's child support obligation from *March 20, 1998, to April 1, 1999*. These paragraphs provide as follows:

> It is found that the appropriate amount of child support for two children based upon the Child Support Guidelines and the income of $3,279.00 per month is $1,049.00 per month, *nunc pro tunc* March 20, 1998.

*        *        *

-3-

> It is found that child support due and owing by [Father] to [Mother] from March 20, 1998 to April 1, 1999 is $12,588.00, based upon a net income of $3,279.00 per month and appropriate child support thereto in the amount of $1,049.00 per month.

Inexplicably, and with no real support in the record, the referee's decree of December 27, 1999, by implication, retroactively modified the previous order of the court setting child support at $650 per month effective August 1, 1997, at least as to the period from March 20, 1998, to April 1, 1999.

After calculating what was owed by Father from March, 1998, to October, 1999, and what was paid during that time, the findings conclude (1) that Father is entitled to a credit of $32.42 for the payment of child support, automobile and health insurance premiums; (2) that Father owes an arrearage of $3,217.93 for unpaid medical expenses, $3,626.56 for unpaid educational expenses, and $6,262.50, for attorney's fees incurred by Mother from March, 1998, to October, 1999.

Father sought a rehearing with the trial court, which was denied. Thereafter, the trial court confirmed the referee's findings. It is from this order that Father appeals, raising four issues:

> 1. Did the trial court err in increasing child support payments when there was no petition for increase of child support filed?
>
> 2. Did the trial court err in holding that Father owed $13,074 in arrearage relative to child support, automobile insurance, medical expenses, educational expenses, and attorney's fees?
>
> 3. Did the trial court err in the award of attorney's fees to Mother?
>
> 4. Is Father entitled to an award of attorney's fees?

II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d); ***Doles v. Doles,*** 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn,*** 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

III.

Father argues that the trial court erred in increasing his child support obligation to $1,049 per month for the period of March 20, 1998, to April 1, 1999. First, he contends that such an increase was in error because Mother had not filed a pleading seeking a modification of his obligation.

Second, he argues that the increase constitutes a retroactive modification of child support, in violation of T.C.A. § 36-5-101(a)(5).[5]

The record reflects that Mother never filed a petition affirmatively seeking to modify the child support after the entry of the judgment of absolute divorce. However, it is clear that with respect to the agreed order of August 7, 1997; the hearing of March 24, 1999 (which led to the order of April 5, 1999); and the hearing of October 6, 1999 (the last hearing before the referee, at which he set child support at $685 per month effective October 1, 1999), the parties either modified the child support by an agreed order (*e.g.,* the agreed order of August 7, 1997) or presented the issue of *prospective* child support to the referee with the implied consent of both parties. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02. Accordingly, we find no basis for disturbing the child support decrees up to and including the referee's pronouncement that child support would be $685 per month effective October 1, 1999. It follows that child support, prior to the last order below, was set and to be calculated thusly:

| Date of Hearing | Entry of Order | Effective Date | Period Covered | Monthly Child Support |
|---|---|---|---|---|
| 7-16-97 | 8- 7-97 | 8-1-97 | 8-1-97 to 4-1-99 | $ 650 |
| 3-24-99 | 4- 5-99 | 4-1-99 | 4-1-99 to 10-1-99 | 1,080 |
| 10- 6-99 | 12-27-99 | 10-1-99 | 10-1-99 forward | 685 |

We agree with Father, however, that the referee's December 27, 1999, findings constitute a retroactive modification of child support. T.C.A. § 36-5-101(a)(5) prohibits the modification of a child support order "as to any time period or any amounts due prior to the date that *an action for modification is filed* and notice of the action has been mailed to the last known address of the opposing parties." (Emphasis added). As we have recently stated:

> This statutory provision is designed to prohibit the retroactive modification of child support. In other words, a court has no power to alter a child support award as to any period of time occurring prior to the date on which an obligee spouse files his or her petition.

*Alexander v. Alexander,* 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000), *perm. app. denied* December 18, 2000 (citation omitted). In the instant case, an order was entered on August 7, 1997, which clearly addresses and sets forth Father's child support obligation. At no time did Mother file a petition seeking to modify that order. Nevertheless, the referee substantially modified the child support due under his prior order of August 7, 1997, *going all the way back to March 20, 1998, and*

[5]T.C.A. § 36-5-101(a)(5) (Supp. 2000) provides, in pertinent part, that an "order for child support...shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties."

*continuing up to April 1, 1999.* Thus, the most recent order reached back 21 months (to August 7, 1997) and retroactively modified 12 months plus of child support. Such retroactive modification of court-ordered child support is precisely what is forbidden by T.C.A. § 36-5-101(a)(5). Accordingly, we hold that the trial court erred in retroactively modifying Father's child support obligation for the period from March 20, 1998, to April 1, 1999.

IV.

Our finding that Father's child support obligation was retroactively modified in violation of T.C.A. § 36-5-101(a)(5) leads us to conclude that the trial court also erred in determining that Father was in arrears, since the arrearage calculated by the trial court was based upon its erroneous finding that Father owed $1,049 per month from March 20, 1998, to April 1, 1999.

According to the trial court's decrees prior to the last order – which last order we have found to be in error – Father was obligated to pay the following amounts of child support:

|  |  |
|---|---|
| August, 1997 to March, 1999 | |
| (20 months x $650) | $13,000 |
| April, 1999 to September, 1999 | |
| (6 months x $1,000) | 6,000 |
| October, 1999 | |
| (1 month x $685) | 685 |
| Total Child Support Obligation | $19,685 |

In addition to child support, Father was obligated under the August 7, 1997, agreed order to pay $20,000 in arrearage, consisting of $14,000 in unpaid child support and $6,000 in attorney's fees. The agreed order further requires Father to pay $125 per month in automobile insurance and $150 per month in health insurance. Father was also required under the marital dissolution agreement to pay medical and educational expenses for the parties' three children. Adding all of Father's obligations together, Father was required to pay a total of $53,954.49 from August 1, 1997, through October, 1999, calculated as follows:

|  |  |
|---|---|
| Child Support | $19,685.00 |
| Arrearage | 20,000.00 |
| Auto Insurance | |
| (27 months x $125) | 3,375.00 |
| Health Insurance | |
| (27 months x $150) | 4,050.00 |
| Medical Expenses | 3,217.93 |
| Educational Expenses | 3,626.56 |
| Total Obligations | $53,954.49 |

-6-

According to the referee's findings entered December 27, 1999, Father paid or received credits for the following:

| | |
|---|---|
| Child Support Paid | |
| July, 1997 – September, 1999 | $20,746 |
| Lump Sum Payment | |
| September, 1997 | 12,000 |
| Lump Sum Payment | |
| Social Security | 9,730 |
| Monthly Payments, Social Security | |
| October, 1997 – October, 1999 | |
| (25 months x $518) | 12,950 |
| Total Amount Paid | $55,426 |

Upon reviewing the evidence, we conclude that Father was obligated to pay $53,954.49 and that he actually paid a total of $55,426, resulting in an overpayment by Father of $1,471.51. The trial court therefore erred in finding that Father was in arrears; Father, in fact, has overpaid his obligations.

Father claims an additional credit of $1,220.68 for "overpayment" of the children's automobile insurance. It is not clear from the record if, and to what extent, he is entitled to such a credit. In the order entered *nunc pro tunc* March 20, 1998, the referee found that the actual cost of the automobile insurance – which at that time covered only the parties' oldest daughter, Lindsay – was $877.16 annually. The referee decreed that the difference between the actual cost of the insurance and the amount paid by Father per year ($1,500) should be applied to Father's child support arrearage. However, the record reflects that at some point after March 20, 1998, the parties' second child, Cassandra, began driving and thus required insurance coverage as well. The precise cost of insuring both daughters is unclear from the record. Accordingly, upon remand, the court below should have a hearing to determine whether and to what extent Father is entitled to a credit for overpayment of his automobile insurance obligation. The court below then should credit the total overpayment to which Father is entitled, including the $1,471.51 found above, against his current support obligation.

V.

Father argues that since he was not in arrears, the trial court erred in awarding Mother her attorney's fees of $6,262.50. We agree.

T.C.A. § 36-5-103(c) (Supp. 2000) provides for the award of attorney's fees in child support cases. That statute provides as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney

fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Upon reviewing the record in this case, we find that the trial court's award of attorney's fees was in error. The evidence reflects that Father was not in arrears in his obligations and had in fact paid more than he was required to pay under the orders of the court. Given these facts, we do not find that it would be equitable for the award of attorney's fees to Mother to stand.

Father argues that he is entitled to his attorney's fees as "the prevailing party." We disagree. Father cites no authority, and we are not aware of any, that stands for the proposition that a non-custodial parent is entitled to recover his or her attorney's fees under T.C.A. § 36-5-103(c) by virtue of being "the prevailing party." The purpose of an award of attorney's fees in a support action is not to benefit the parents but to benefit the children and to facilitate their access to the courts. *Sherrod v. Wix,* 849 S.W.2d 780, 784 (Tenn. Ct. App. 1992). Neither the language of the statute nor the purpose found in *Sherrod* authorizes an award of fees to a non-custodian such as the father in the instant case. We therefore decline to make such an award.

VI.

The judgment of the trial court is reversed. This case is remanded for the entry of an appropriate order, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee, Patricia Jane Sadler.

_____
CHARLES D. SUSANO, JR., JUDGE