IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2000

## DOUGLAS ROBERT DuBOIS v. ROSEMARY ANN DuBOIS

**Appeal from the Chancery Court for Coffee County**
**No. 98-314      John W. Rollins, Chancellor**

_____

**No. M1999-00330-COA-R3-CV - Filed April 23, 2001**

_____

Plaintiff/Appellant, Douglas Robert DuBois, and Defendant/Appellee, Rosemary Ann DuBois, are parents of two minor children, Caitlin Michel DuBois and Thomas Jackson DuBois. The Decree of Divorce was entered on November 5, 1998, following two days of trial that occurred on the 8th and 9th of October 1998. Both parties filed T.R.C.P. Rule 59 motions to alter or amend the final decree which, in effect, sought a redetermination by the trial judge of almost everything in issue. All of these motions were heard on May 12, 1999, after which, on June 15, 1999, the trial judge entered an order determinative of these Rule 59 motions. From this order, Plaintiff, Douglas Robert DuBois, appeals. We affirm the trial judge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Jeffrey L. Levy, Nashville, Tennessee, for the appellant, Douglas Robert DuBois.

Robert Todd Jackson, Nashville, Tennessee, for the appellee, Rosemary Ann DuBois.

**OPINION**

Douglas Robert DuBois and Rosemary Ann DuBois were married April 14, 1985 and are the parents of two minor children, Caitlin Michel DuBois born in 1985 and Thomas Jackson DuBois born in 1997.

Douglas Robert DuBois ('Plaintiff'), filed suit for divorce in Coffee County, Tennessee on August 10, 1998 alleging that his wife had engaged in an adulterous relationship with a co-worker and had neglected the minor children of the parties and alleging further that she went into fits of rage, striking Plaintiff on numerous occasions, and otherwise showed callous disregard for the welfare of the minor children of the parties. He prayed for an absolute divorce, custody of both minor children, an equitable distribution of marital properties, and child support. He also asked the court to issue

a temporary restraining order restraining the defendant from interfering with his peaceful custody of the minor children pending a hearing in the case. An ex parte restraining order was apparently issued on August 10, 1998, though same does not appear in the record. On August 21, 1998, Rosemary Ann DuBois ('Defendant'), filed a petition seeking custody pendente lite, support pendente lite, and dismissal of the ex parte restraining order, which had apparently restrained her "from interfering with the plaintiff's peaceful custody of the minor children of the parties, subject to the defendant's reasonable visitation and from interfering with plaintiff's exclusive use of the marital home." She went on to allege in her petition:

> The restraining order went on to restrain the defendant from "coming about the residence," the plaintiff, or the minor children, wherever they may be, except that which is necessary for reasonable visitation rights;" those rights were not set out. Though the complaint in its prayer asked a date be set and that notice be served on the defendant of a hearing on the issue of support, custody and plaintiff's exclusive use of the residence, no notice was served on the defendant as normally is done when a temporary order of this nature is issued.

> Implicit in the allegations and prayer of the complaint is the assumption that the plaintiff and the children will be residing in the marital home in Tullahoma, Tennessee, a few miles from defendant's employment as a chemist at Jack Daniels in Lynchburg, Tennessee. Defendant would show that the plaintiff has not lived in the marital home since the filing of the complaint and in fact has advised her that he will not even make the house payment and that she will have to do so. He has been residing with the children in Mt. Juliet, Tennessee, with his parents.

Her petition also sought custody of the minor children because of what she alleges to be Plaintiff's addiction to alcohol and drugs. She further alleged that he suffered from certain mental disorders.

A hearing on these motions was set for September 1, 1998, together with a motion by Plaintiff for the trial court to hear the testimony of the twelve year old daughter of the parties, Caitlin Michel DuBois. Plaintiff filed a response to the August 21, 1998 petition of Defendant wherein he stated in part:

> Plaintiff denies the allegations contained in paragraph 4 of the Petition, and would state that on the date the Complaint for Divorce and Restraining Order were filed and presented to the Court, at the direction of counsel, Plaintiff had the children in his physical custody. It was Plaintiff's intention at the time of filing to remain in the residence. CAITLIN MICHEL DuBOIS, minor daughter of the parties, had conversation with Defendant on August 10th and 11th and it was after these conversations when Caitlin advised Plaintiff of her desire to attend school at Mt. Juliet, Tennessee. She made her feelings known that she did not want to stay in Tullahoma. Plaintiff discussed living in Mt. Juliet with his parents and they agreed to assist him in caring for the children during his rotating shift work, leaving neither

child without adult supervision at any time. Plaintiff decided at that time that it would be in the best interest of the children to move to Mt. Juliet and enrolled his daughter in school there on August 19, 1998, and she began going to school on August 24, 1998. Plaintiff would further state that he cancelled the automatic draft of the house payment from coming out of his bank account, but he advised Defendant that he would assist in the payment of the marital debts. Plaintiff advised Defendant that she was free to have visitation with the minor children at the residence, and delivered the children to Defendant and Defendant and the minor children remained at the residence from August 21, 1998 through August 23, 1998. Plaintiff advised Defendant that she could continue in use of the residence, he would so advise his attorney, and for her to contact her attorney so that the attorneys could make arrangements for her continued use of the residence.

He further admitted that he was previously diagnosed with bipolar disorder and previously had an alcohol and drug problem but was presently free of such maladies.

On September 1st and 2nd, 1998, the trial judge patiently listened to two days of unimpressive testimony, primarily by the parties, at the conclusion of which he observed:

THE COURT: I'm not real impressed with either one of these people, either one of your clients, for entirely different reasons. I think Mr. DuBois is manipulative, and I think he's manipulated his wife and also possibly these children.

And I'm not addressing the affair other than how it applies and how it impacts on the children. As I said before, I don't need to sit in moral judgment on the activities of those that appear before me. I've got enough trouble looking after myself. As far as I'm concerned that's a situation between her and herself and whoever else and that sort of thing, and the only impact it has on this Court is how it may or may not affect grounds for divorce. I think she used exceedingly poor judgment in arranging her relationships with this other man, not the relationship as much as how she did it. That troubles me.

I'm going to leave these children where they are for the time being. And then in October I'm going to take another hard look at it, and it may very well be I'm going to give this lady custody of her children back. I don't know.

Following the September 1st and 2nd 1998 hearing, the trial court entered an order on September 14, 1998 providing for temporary custody and other relief with the court ordering that:

Plaintiff, DOUGLAS ROBERT DuBOIS, shall have temporary custody of the minor children of the parties, CAITLIN MICHEL DuBOIS and THOMAS JACKSON DuBOIS, pending the final hearing of this matter, subject to visitation rights of Defendant.

Defendant, ROSEMARY ANN DuBOIS, shall have visitation with the minor children, pending the final hearing as follows:

a. Friday, September 4, 1998, at 5:00 p.m., through Monday, September 7, 1998, at 5:00 p.m.. Thereafter, every other weekend, from 5:00 p.m. on Friday, until 5:00 p.m. on Sunday.

b. One evening per week, during the week Defendant does not have weekend visitation, in the Smyrna/Murfreesboro area at the residence of Defendant's father, from 4:00 p.m. until 9:00 p.m.

c. In addition, Plaintiff shall have visitation with the minor child, THOMAS JACKSON DuBOIS, on Thursday, September 3, 1998, with Defendant being responsible for transportation.

d. Plaintiff shall provide transportation of the children to and from the marital residence in Tullahoma and/or the Smyrna/Murfreesboro area.

e. Plaintiff, DOUGLAS ROBERT DuBOIS, shall allow the children to communicate with Defendant, ROSEMARY ANN DuBOIS, by telephone at all reasonable times.

3. Plaintiff shall insure that the minor daughter, CAITLIN MICHEL DuBOIS, is not in the company of the young man identified at the hearing and not engaged in any type of relationship except obvious social situations with other people around.

4. Neither party shall have companions of the opposite sex around the children during period of visitation and/or custody under inappropriate circumstances pending the final hearing of this cause.

5. Plaintiff shall be responsible for payment of one-half of the mortgage owing to First Tennessee Mortgage in the amount of $482.72 per month, one-half of the Jack Daniel's Credit Union debt in the amount of $206.89 per month, and all of the car payment in favor of Jack Daniel's Credit Union, pending the final hearing of this matter.

6. Defendant shall have use of the marital residence pending the final hearing of this cause.

7. Plaintiff shall, as quickly as possible, return to his treating physician, Dr. Scott E. Ruder, for evaluation regarding his bi-polar condition and Dr. Ruder shall submit, directly to the Court with copies to counsel, a report regarding

-4-

Plaintiff's condition and his opinion regarding the discontinuation of medication by Plaintiff.

8. All other matters are reserved pending final hearing of this cause.

From the very outset of the case as clearly evidenced by the September 1 and 2 hearings on temporary custody and temporary use of the marital home and other preliminary matters, the trial court saw that it was dealing not so much with a *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983) "comparative fitness" problem, as with a "comparative unfitness" choice between two people with less than satisfactory parenting abilities. Defendant, Mrs. DuBois, had engaged in an extensive, adulterous affair with a co-worker while leaving her 13 year old daughter, Caitlin, to babysit the 18 month old Thomas Jackson DuBois. Mrs. DuBois worked at Jack Daniel Distilleries in Moore County while Mr. DuBois worked at Bridgestone, and the parties resided in Tullahoma. Mr. DuBois had a long history of alcohol and drug abuse, and many episodes of physical violence occurred between the parties which were known to the children. Upon discovering the illicit affair between Mrs. DuBois and her paramour, Mr. DuBois procured an *ex parte* Order of Custody, dispossessing Mrs. DuBois of the marital home. Hardly before the ink was dry on the *ex parte* order, Mr. DuBois took both children and moved in with his parents in Mt. Juliet, thus vacating the marital home that he had successfully enjoined Mrs. DuBois from entering.

Mrs. DuBois, likewise, had some history of drug abuse while Mr. DuBois suffered from manic depressive/bi-polar characteristics. Caitlin preferred to live with her father and his parents in Mt. Juliet.

The custody and visitation situation remained under the temporary order until the October 8th and 9th, 1998 alleged "final" hearing.

In large measure, the October hearing was simply a reiteration of the September hearing with each party attacking the behavior, character and parental ability of the other. Plaintiff testified that his work at the Bridgestone Warren County facility resulted in earnings of $52,000 annually, and the record showed that Defendant earned approximately the same at her employment at Jack Daniel's Distillery. Plaintiff testified at length to his prior use of, and addiction to, alcohol and drugs including marijuana, cocaine, speed and mushrooms. He testified that he grew marijuana in his apartment outside of Murfreesboro in 1985 and in 1992. He testified that following an accident in 1994 he entered drug and alcohol rehab which was successful. He moved from Tullahoma to Mt. Juliet because his daughter, Caitlin, wanted to make the move and he wanted, and needed, the help of his parents in caring for the children. He proposed to keep custody of both children with his parents in Mt. Juliet to allow his parents and sisters to take care of the children during their after school activities when he was unavailable. The general testimony of Plaintiff indicated that he wanted to keep the children away from their mother as much as possible and even feared abuse of the smaller child, though he had no evidence that such had occurred.

At the conclusion of this second two day hearing on October 9, 1998, the trial judge reiterated much of his dissatisfaction with both parties, and on November 5, 1998, entered what was called a "Final Decree of Divorce." Aside from dissolving the marriage, the final decree provided:

IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED by the Court as follows:

1. The parties shall have joint custody of their two minor children, with Plaintiff having primary physical custody.

2. Defendant shall have visitation with the parties' minor son, THOMAS JACKSON DuBOIS, every weekend from 8:00 a.m. Friday or after work on Friday, at the option of the Defendant depending on Defendant's work schedule, until Sunday at 5:00 p.m.

3. Defendant shall have visitation with the parties' minor daughter, CAITLIN MICHEL DuBOIS, every other weekend following the schedule established in the Order entered on September 14, 1998, from 5:00 p.m. Friday until 5:00 p.m. Sunday, plus one evening per week in the Smyrna, Tennessee, area at the residence of Defendant's father, from 4:00 p.m. to 9:00 p.m.

4. The exchange of the children for visitation shall take place at the home of Defendant's father in Smyrna, Tennessee, unless the parties agree to the contrary.

5. Defendant, ROSEMARY ANN DuBOIS, SSN: [Redacted] , shall pay sixty percent (60%) of the child support for one child, based upon her income of Fifty Seven Thousand Five Hundred Fifty-Two and 00/100 ($57,552.00) per year, for the support of the parties' minor child, CAITLIN MICHEL DuBOIS, which is Four Hundred Thirty Eight Dollars and 00/100 ($438.00) per month, to be paid twice a month at the rate of Two Hundred Nineteen and 00/100 ($219.00) per pay period, to be paid by the wage assignment through Defendant's employment at Jack Daniels Distillery, P. O. Box 199, Lynchburg, Tennessee, 37352. This is a deviation from the State of Tennessee Department of Human Services Child Support Guidelines, but is allowed due to the additional time over and above that anticipated by the Guidelines that Defendant, ROSEMARY ANN DuBOIS, will exercise visitation with the youngest child of the parties, THOMAS JACKSON DuBOIS.

6. The Court finds that Plaintiff, DOUGLAS ROBERT DuBOIS, is responsible to Defendant, ROSEMARY ANN DuBOIS, for the value of her missing jewelry in the amount of Six Thousand Dollars ($6,000./00), and the court awards to Defendant a Judgment against Plaintiff in the amount of Six Thousand Dollars and 00/100 ($6,000.00).

[7.] All [other] issues before the court are reserved.

[8.] In the event the parties are unable to amicably resolve their rights to the personal property, real estate, and debts, within two (2) weeks form the date of entry of this Final Decree of Divorce, the Court will, upon Motion of either party, resolve those differences by an Order for the sale of said property and allocation of responsibility for any remaining debt.

Nobody was satisfied with this "Final Decree of Divorce" and on the same day it was entered, November 5, 1998, Plaintiff filed his Motion to Alter or Amend Final Decree pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. This motion objected to practically every adjudication made in the final decree, in particular the provisions relative to visitation with the children by Defendant.

On November 6, 1998, Defendant filed her Motion to Alter or Amend objecting to certain provisions of the visitation schedule and child support.

Finally, the case came on for a third hearing on May 12, 1999, and when counsel had concluded extensive opening statements complaining about practically everything in the purported final decree, the court observed: "You know, gentlemen, with all these issues we might just be better off to cancel this divorce and start all over again."

The difficulty on this appeal is that each party wants the November 5th, 1998 Final Decree of Divorce to be final for *res judicata* purposes in those portions thereof that are favorable to the position of such party but subject to alteration in all unfavorable respects. As example, Plaintiff wishes for the custody adjudication of the November 5th order, by which he was awarded physical custody of both children, to be *res judicata,* but at the same time wishes to attack the portion of the decree finding him responsible to the defendant for $6,000 because of the "disappearance" of her jewelry.

Defendant, on the other hand, asserts the finality of the November 5th, 1998 decree for *res judicata* purposes on the jewelry issue but non-*res judicata* on the custody issue.

In these respects, both parties are in error, as the November 5th, 1998, Final Decree of Divorce is *res judicata* as to no issue in the case. Both parties filed Rule 59 T.R.C.P. motions, subsequent to the November 5, 1998 Final Decree of Divorce and disposition of these motions was the subject of the extensive May 12, 1999 third hearing. In the present posture of the case, the consideration by the trial court and the standard by which we consider the case on appeal, is set forth in *Young v. Young*, 1998 WL 730188 (Tenn. Ct. App. 1998).

We turn first to the proper standard of review for this case. Ms. Young asserts that we should treat this case as an appeal from an order changing custody. Therefore, she insists that the trial court's decision to award custody of the parties'

daughter to Mr. Young can be upheld only if there was a material change in circumstances occurring between April 21, 1997, when the trial court entered its initial custody, and June 26, 1997, when the trial court entered its order granting Mr. Young's motion to alter or amend. We disagree that this is a change of custody case.

A court's decision with regard to custody and visitation, once made and implemented, is res judicata upon the facts in existence or reasonably foreseeable when the decision is made. *See Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). Thus, the courts will not change an existing custody or visitation arrangement unless the party seeking the change can demonstrate the existence of a change in circumstances materially affecting the child's interests that could not have reasonably been foreseen when the custody or visitation agreement was ordered. However, the doctrine of res judicata does not apply when the judgment sought to be given res judicata effect is not final. *See Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn. Ct. App. 1990); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). The trial court's April 21, 1997 order granting custody to Ms. Young never became final.

A judgment adjudicating all the claims between all the parties becomes final thirty days after entry unless one of the parties files a timely Tenn. R. Civ. P. 59 motion. Before a judgment becomes final, the trial court may alter or amend it either on its own motion or at the request of one of the parties. *See Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976); *Newport Hous. Auth., Inc. v. Hartsell*, 533 S.W.2d 317, 320 (Tenn. Ct. App. 1975); *Moore v. Standard Life & Accident Ins. Co.*, 504 S.W.2d 373, 375 (Tenn. Ct. App. 1972). Thus, as long as its judgment has not become final, the trial court m[a]y change its mind after reconsidering the proof and the applicable law. *See Waste Management, Inc. of Tenn. v. South Cent. Bell Tel. Co.*, No. 01A01-9504-CV-00182, 1997 WL 71811, at * 2 (Tenn. Ct. App. Feb. 21, 1997) (No Tenn. R. App. P. 11 application filed); *Dowling v. Fawver*, C.A. No. 715, 1987 WL 20190, at * 6 (Tenn. Ct. App. Nov. 25, 1987) (No Tenn. R. App. P. 11 application filed).

The trial court's April 21, 1997 order granting Ms. Young custody of the parties' daughter never became final because both parties filed Tenn. R. Civ. P. 59.04 motions within thirty days after its entry. Thus, the trial court was free to change its mind about its initial custody decision based on the proof received during the original divorce trial and the proof adduced at the hearing on the parties' Tenn. R. Civ. P. motion. Because the April 21, 1997 order was not final, it did not preclude the court from considering the custody issue without first finding that there had been a material change in circumstances between the original divorce hearing and the hearing on the parties' Tenn. R. Civ. P. 59.04 motions. Accordingly, we will review the trial court's custody decision as an initial custody order.

*Young*, 1998 WL 730188 at * 3.

The first issue on appeal is: "1. Whether the trial court was in error in modifying custody of the parties' minor son when there had been no negative change of circumstance between the hearing on merits of the divorce and the hearing on Motions to Alter and Amend the court's final decree."

This issue is resolved by *Young v. Young*, 1998 WL 730188 (Tenn. Ct. App. 1998) since the November 5th, 1998 decree was not a final decree.

The next issue asserted is: "2. Whether even considered de novo, the trial court erred in placing physical custody of Caitlin with Mr. DuBois and physical custody of Jackson with Mrs. DuBois."

In this respect, in the final judgment in the case entered June 15, 1999, following the final hearing of May 12, 1999, the trial court held:

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED by the Court that:

1. The parties shall have joint custody of the minor children, CAITLIN MICHEL DuBOIS and THOMAS JACKSON DuBOIS, with Plaintiff, DOUGLAS ROBERT DuBOIS, having primary physical custody of the parties' minor daughter, CAITLIN MICHEL DuBOIS, and Defendant, ROSEMARY ANN DuBOIS, having primary physical custody of the parties' minor son, THOMAS JACKSON DuBOIS.

2. Plaintiff, DOUGLAS ROBERT DuBOIS, shall have visitation with the parties' minor son, THOMAS JACKSON DuBOIS, every other weekend beginning at 8:00 a.m. on Friday morning until 5:00 p.m. on Sunday evening, with Plaintiff being responsible for picking up and returning the minor child to the residence of Defendant in Tullahoma, Tennessee, for the next six (6) months. After the expiration of six (6) months, said exchange shall take place at Exit 89 off Interstate 24, Rutherford County, Tennessee, at the Citgo gas station. Said visitation shall coincide with the weekends Plaintiff is not working in accordance with his work schedule.

3. Defendant, ROSEMARY ANN DuBOIS, shall have visitation with the parties' minor daughter, CAITLIN MICHEL DuBOIS, every other weekend from 6:00 p.m. on Fridays until 5:00 p.m. on Sundays. Exchange for this visitation shall take place Exit 89 off Interstate 24, Rutherford County, Tennessee, at the Citgo gas station.

4.      In view of the split physical custody of the parties' minor children, the visitation of the children shall coincide so that the children shall be together each weekend of visitation.

5.      Each party shall have all rights and privileges set forth in Tenn. Code Ann. § 36-6-101(a)(3) as follows:

a.      The right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations;

b.      The right to send mail to the child which the other parent shall not open or censor;

c.      The right to receive notice and relevant information as soon as practicable but within twenty-four (24) hours of any event of hospitalization, major illness or death of the child;

d.      The right to receive directly from the child's school upon written request which includes a current mailing address and upon payment of reasonable costs of duplicating, copies of the child's report cars, attendance records, names of teachers, class schedules, standardized test scores and any other records customarily made available to parents;

e.      The right to receive copies of the child's medical records directly from the child's doctor or other health care provider upon written request which contains a current mailing address and upon payment of reasonable costs of duplication;

f.      The right to be free of unwarranted derogatory remarks made about him or her to his or her family by the other parent to or in the presence of the child.

6.      No child support shall be paid by either party.

First of all:

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Thus, we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise.

*Nichols v. Nichols*, 792 S.W.2d at 716; *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992).

*Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

This June 15th decree of the trial court is a final judgment wherein the trial court properly considered all of the evidence from all three of the separate hearings and then made its final decision on custody.

The predicate for this final decision was expressed by the trial court at the end of the May 12th, 1999 hearing:

> THE COURT: I'll tell you what I'm going to do. These folks are not doing any better now than they were before they got this divorce and I'm not going - - I'm just going to tell you the way it is. If they can bend it, they can bend it, but they're going to have to do it in the spirit of cooperation.
>
> The memorandum agreement that's Exhibit 2 is a division of the personal property in this marriage as found by Jan Walden. I'm going to leave legal custody the same, but I'm giving Mr. DuBois physical custody of the daughter and Ms. DuBois physical custody of her son.
>
> Visitation will be every other weekend with Mr. DuBois with his son commencing Friday morning at 8:00 o'clock and stopping Sunday afternoon at 5:00. On the alternate - - and in light of the history of the testimony, Mr. DuBois is going to have to come down here and pick his son up and bring him back for the next six months.
>
> On the alternating weekend the wife is having visitation with her daughter. They are to meet at Exit 89 at the Citgo gas station and make that exchange the same schedule, 8:00 o'clock - - well, Friday afternoon after, say, 5:00 o'clock until Sunday afternoon at 5:00 o'clock.
>
> . . . .
>
> MR. ROGERS: If your Honor please, will you recite again what the visitation rights are?
>
> THE COURT: Yes, sir. Mr. DuBois will have visitation with his son every other weekend starting Friday until Sunday. And it can be at 8:00 o'clock Friday morning if he wants it until 5:00 o'clock on Sunday. On the alternate weekend Ms. DuBois will have visitation - -
>
> MR. PARSONS: (Interposing) What time on Sunday, Judge? I'm sorry.

-11-

THE COURT: 5:00 o'clock, 8:00 to 5:00. That's with her son he is to have. She is to have visitation with her daughter every other weekend. And I guess we need to set it like at Friday at 6:00 o'clock so it doesn't interfere with school until Sunday at 5:00 o'clock. And they're to meet at Exit 89 for that exchange for the next six - - for the next six months because, frankly, I believe Ms. DuBois when she talks about his tardiness.

If he wants to visit his son, he's got to come to Tullahoma and get him and bring him back for the next six months on time. And if any more of this stuff either way goes, folks, I'm going to stop visitation, period.

It's not fair to your children. I don't care whether it inconveniences you or not. It really doesn't matter. I really flat don't care. But the children need to have a reasonable expectation of when they're going to see Mom and when they're going to see Dad, and you might as well get ready for it. Anything else?

MR. ROGERS: About the other visitation rights, if your Honor please - -

THE COURT: I'm not - - I'm setting - - I'm not setting vacation. I'm not setting birthdays. I'm not setting summer vacation. If these people will get reasonable, I'll listen to it by letter, but this is it, every other weekend.

The evidence taken as a whole showed an adulterous relationship between Mrs. DuBois and a co-worker known to her 13 year old daughter that was in disregard of her parental obligations to both the daughter and the 18 month old son. This showing provided ample grounds for the award of the divorce to the Plaintiff and no complaint is made by him as to the granting of the divorce. The record then shows a pattern of conduct by Plaintiff designed to separate both of the children from their mother. He immediately moved to Mt. Juliet with the two children, acting under an ex parte custody order. After the September and October hearings, the trial court tried to make the best of the situation continuing primary physical custody with Plaintiff. The testimony at the May 12th hearing displays a pattern of conduct by Plaintiff designed to obstruct visitation between Defendant and her children, particularly visitation with the younger child. He was repeatedly late in delivering the child to the Defendant at the appointed meeting place, and sometimes failed to produce the child at all. Custody should never be used to punish or reward the parents, *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995), and the needs of the children are always paramount, with the desires of the parents' being secondary. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986).

The evidence does not preponderate against the decision of the trial judge as to custody of the two children, and his judgment will not be disturbed on appeal. *Rice v. Rice*, 983 S.W.2d 680 (Tenn. Ct. App. 1998).

The final two issues on appeal are: "3. The trial court erred in failing to divide the parties' retirement funds equitably" and "4. The court erred in granting Mrs. DuBois a judgment for her jewelry that purportedly was missing."

As to the 401K pension accounts, any objection to the disposition by the trial court is foreclosed by the record of the October 8th, 1998 hearing, where the record discloses the appellee's assertion "I would prefer that he keep his 401K, and I keep mine."

      THE COURT: Is that an issue?

      MR. ROGERS: (The appellant's counsel). No, it's not, if your Honor please, that's what we're proposing.

      THE COURT: Okay.

Further, there is no provision in the law that a single marital property asset must be distributed equitably, so long as the totality of the marital property is subject to an equitable distribution. In this respect, Plaintiff/Appellant does not complain.

Relative to the $6,000 judgment granted to Defendant for the loss of her jewelry, this involves purely a credibility issue. The trial court simply did not believe the testimony of Plaintiff and did believe the testimony of Defendant. The evidence does not preponderate against the judgment of the trial court.

The judgment of the trial court is in all respects affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the cause are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE

-13-