IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## KAREN ANN CARROLL MUNDY v. JAMES DANNY MUNDY

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-95-558      John B. Hagler, Jr., Judge**

_____

**No. E1999-02697-COA-R3-CV - Decided - April 28, 2000**

_____

This is a divorce case. The trial court granted the plaintiff, Karen Ann Carroll Mundy ("Wife"), an absolute divorce; awarded her custody of the parties' two minor children[1]; ordered the defendant, James Danny Mundy ("Husband"), to pay $860 per month child support; divided the marital estate; and awarded to Wife Husband's share of Wife's retirement account as alimony *in solido*. Husband appeals, challenging (1) the trial court's calculation of his income for the purpose of determining child support; (2) the trial court's division of marital property; (3) the award of Husband's interest in the retirement annuity as alimony *in solido*; and (4) the award to Wife of attorney's fees. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which FRANKS and SWINEY, JJ., joined.

Randy Sellers, Cleveland, Tennessee, for the appellant, James Danny Mundy.

Roger E. Jenne, Cleveland, Tennessee, for the appellee, Karen Ann Carroll Mundy.

**OPINION**

I. *Facts*

The parties married in 1971. Throughout their 27-year marriage, Husband was self-employed and engaged in the business of building and remodeling houses. Wife obtained a Ph.D. in 1985 and thereafter became a professor of sociology at Lee College, earning an annual salary of

---

[1]The parties had three children, one of whom is now emancipated by age. The two minor children were 15 and 11 years old respectively at the time of trial.

$40,000. Through her employment at Lee College, Wife established a retirement account, which Wife estimated to be worth approximately $70,000.[2]

The parties separated in 1993. Although they made no formal provisions for maintenance or child support during their separation, they did agree that Wife would manage, and collect the rent from, the two rental properties owned by the parties. These properties consisted of a house and a four-apartment complex. Wife received an average of $1,500 per month in rental income as a result of this arrangement. The parties also agreed that during the separation Wife would receive all dividends from the parties' shares of stock in First Citizens Bank, which dividends amounted to a total of $2,559.32 from 1993 to 1998.

In 1995, Wife filed for divorce on the ground of inappropriate marital conduct.[3] The trial of this case was held on August 18, 1998. The delay in bringing this case to trial was apparently a result of Wife's unsuccessful attempts at reconciliation.

## II. *The Trial Court's Findings*

The trial court found and distributed the marital assets of the parties as follows:

### To Wife

| | |
|---|---:|
| Marital Residence and Lots | $110,000 |
| Fourplex and Lot at Ashland Terrace | 126,000 |
| Nine Acres at Tasso Lane (One-half interest) | 25,000 |
| One-half of First Citizens Bank Stock | 20,800 |
| Checking Account | 300 |
| Household Goods | 5,000 |
| 1992 Buick | 4,000 |
| | $291,100 |

---

[2]At trial, Wife produced evidence of the value of the account at the time of the parties' separation in 1993 and the time of trial in 1998. Wife introduced proof that the value of the account in 1993 was $28,751.33. Wife also submitted, as the most recent evidence of value, a statement that indicated that as of June 30, 1997, the account was valued at $67,998.35. Wife testified that, based upon this statement, she estimated that the value of the account as of the time of trial, was approximately $70,000. Husband does not dispute Wife's approximation of the account's current value on appeal.

[3]It was stipulated at trial that Husband was involved with another woman during the marriage.

To Husband

| | |
|---|---:|
| One Lot at Ashland Terrace | $ 24,000 |
| Rental House | 75,000 |
| Lot at Overhead Bridge (One-half interest) | 10,000 |
| Two Lots at Tasso Road | 22,500 |
| One-half of First Citizens Bank Stock | 20,800 |
| Motor Vehicles | 17,500 |
| Tools | 2,000 |
| | $171,800 |

The trial court addressed another marital asset, Wife's retirement account, separately. The trial court awarded the account in its entirety to Wife, holding that Husband's interest in the account would be awarded to Wife as alimony *in solido*. The trial court set forth its reason for the award of alimony as follows:

> in awarding the entire amount to [Wife] the Court is considering fault in this case. Also [it] is considering the fact that her job and her efforts prevent [Husband] from having to pay her periodic alimony. That's due to her own efforts. And it's obvious to the Court that that is income that she will need in the future, particularly in light of her statement, which the Court accredits, that [Husband] said he was going to see how you can raise three boys on a Lee College salary. So it appears that it's appropriate that she should have that entire amount.

The trial court next addressed the issue of child support. It found that the evidence presented by Husband regarding his taxable income did not present "the entire picture" of his income. The court noted that it would be "impossible for the parties to have accumulated what they have accumulated debt free if [Husband's] income were no greater than what appears to be taxable income." The court further noted that the tax returns submitted by Husband showed "a good cash flow" and that many expenses were "expensed through" as a result of Husband's self-employment. The trial court concluded that Husband had a greater earning capacity than Wife; accordingly, the court set child support at $800 per month. It further ordered Husband to pay $60 per month for one-half of the children's health insurance premium.[4] The trial court also awarded Wife $3,500 in attorney's fees.

---

[4]This part of the child support obligation is not disputed on appeal.

## III. *Standard of Review*

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d); ***Hass v. Knighton,*** 676 S.W.2d 554, 555 (Tenn. 1984); ***Doles v. Doles,*** 848 S.W.2d 656, 661 (Tenn.Ct.App. 1992). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn,*** 932 S.W.2d 939, 941 (Tenn.Ct.App. 1996).

## IV. *Child Support*

Husband first argues that the trial court erred in calculating his income for the purpose of determining child support.

It was Husband's position at trial that his annual gross income, as defined by the Child Support Guidelines ("Guidelines"), was $21,126 in 1995; $26,463 in 1996; and approximately $32,000 in 1997. He urges us to set child support based on these figures. Specifically, he suggests a figure of $672. The child support obligation for two children based upon an annual gross income of $32,000 per year, or $2,666 per month, would be approximately $675 per month. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03 and schedule dated February 9, 1999, accompanying the Guidelines. However, the trial court set the child support award at $800, which is correlative to a monthly gross income of approximately $3,275. *See **id.*** The trial court's rationale for the award was that, as discussed earlier, Husband's tax returns did not seem to the trial court to represent "the entire picture" of Husband's income. The court found that it would be "impossible" for the parties to have accumulated their marital assets, without debt, on Wife's salary and Husband's income as shown in the tax returns. The court also found it significant that during the parties' separation, Husband arranged for the purchase of a house and 46 acres by his mother and a friend of Husband's, Carey Watson. Husband testified that he and Watson live on the property and pay the mortgage payments. This arrangement appeared to the court to be an "investment" by Husband, although the property is titled in the names of Husband's mother and Watson. Based upon this post-separation investment and the assets accumulated during the marriage, the trial court concluded that Husband has an earning capacity that is at least equal to, if not greater than, Wife's and that, therefore, Husband's income is at least equal to the income earned by Wife. Accordingly, the court set child support at $800 per month.[5]

We do not find that the evidence preponderates against the trial court's award of child support. The Guidelines provide that an obligor's valuable assets and resources, such as an expensive home or an automobile that seems inappropriate for the income claimed by an obligor, should be considered by a court in imputing income and increasing the amount of a support award

---

[5]Wife's monthly gross income is approximately $3,333. Under the Guidelines, a monthly gross income of $3,333 would result in a child support obligation of approximately $813. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03 and schedule dated February 9, 1999, accompanying the Guidelines.

if the court finds that equity requires such an increase. Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(f). The evidence shows that the parties were able to accumulate several parcels of real estate during their marriage. By the time of trial, the parties had no debts, with the exception of approximately $8,000 owed on a vehicle purchased by Husband during the separation. Based upon this evidence, we cannot say that the trial court abused its discretion in deviating upward from the Guidelines and setting child support at $800. This issue if found adverse to Husband.

V. *Marital Property*

Next, Husband argues that the trial court erred in making a property division and an award of alimony *in solido* heavily weighted in favor of Wife. Husband's challenge of the trial court's division of property is two-fold. First, he argues that the trial court erred in accepting Wife's values of the real estate owned by the parties.[6] Second, while he does not challenge the trial court's finding that a 60-40 percent split of the assets in favor of wife would be equitable,[7] Husband contends that the trial court did not achieve a 60-40 percent split in this case. We will address each of these arguments in the order stated.

The parties submitted their own individual testimony regarding the value of the real estate assets. In addition to her testimony, Wife introduced the testimony of her uncle, Max Carroll, who testified as to the various values of the real estate owned by the parties. Husband objected to Carroll's testimony on the basis that Carroll was not competent to testify as an expert on this issue. The trial court overruled Husband's objection.

In its memorandum opinion from the bench, the trial court accepted the real estate values proposed by Wife, noting that "[W]ife presented the only expert testimony as to the value of the real estate and the Court accepts those values as being proven by a preponderance of the evidence." Husband argues that the trial court erred in (1) admitting the testimony of Carroll on the subject of value and (2) accepting the values of the real estate as expressed by Wife.

We find no error in the trial court's admission of Carroll's testimony. A trial court has wide discretion when dealing with the qualification and admission of the testimony of an expert witness. ***Shelby County v. Barden,*** 527 S.W.2d 124, 131 (Tenn. 1975). A trial court's decision to permit expert testimony will not be disturbed on appeal absent an abuse of discretion. ***Miller v. Alman Constr. Co.,*** 666 S.W.2d 466, 468 (Tenn.Ct.App. 1983). The evidence shows that Carroll had been in the real estate business for over 30 years and was familiar with real estate values in Bradley County. We thus find that the trial court did not abuse its discretion in admitting his testimony.

We further note that the value of marital property is a question of fact. It has been held that a trial court's determination of the value of a marital asset is entitled to great weight on appeal.

---

[6]Husband does not dispute the valuation of any of the other marital assets.

[7]Indeed, the 60-40 percent split of the marital assets was proposed by Husband at trial.

-5-

**Brock v. Brock,** 941 S.W.2d 896, 902 (Tenn.Ct.App. 1996).  Upon reviewing the entire record, we find that the evidence does not preponderate against the trial court's valuation of the assets.

We now address whether the trial court accomplished an equitable division -- in this case, a 60-40 percent split in favor of Wife -- of the marital assets.  A trial court has wide discretion in determining what is equitable in a given case.  **Batson v. Batson,** 769 S.W.2d 849, 859 (Tenn.Ct.App. 1988).  T.C.A. § 36-4-121(c) (1996) sets forth the factors that a court should consider in arriving at an equitable division.  These factors are not to be applied in a mechanical fashion; rather, a trial court, exercising its sound discretion, must carefully weigh each factor in light of the credible evidence presented by the parties.  *See* **Kinard v. Kinard,** 986 S.W.2d 220, 230 (Tenn.Ct.App. 1998); **Brown v. Brown,** 913 S.W.2d 163, 168 (Tenn.Ct.App. 1994).  Generally, we will defer to a trial court's division of marital property unless it is inconsistent with the factors in T.C.A. § 36-4-121(c) or is not supported by a preponderance of the evidence. **Kinard,** 986 S.W.2d at 231; **Brown,** 913 S.W.2d at 168.

In allocating the marital assets, the trial court stated that it was making an approximate 60-40 percent split in favor of Wife.[8]  In making its division, however, the trial court did not consider Wife's retirement account.  Instead, the court addressed the retirement account separately, finding that Husband's interest should be awarded to Wife as alimony *in solido*.

We find that the trial court's award of Husband's interest in the retirement account as alimony *in solido* was in error.  An award of alimony requires careful consideration of the factors set forth in T.C.A. § 36-5-101(d) (Supp. 1999).  One of the most important factors in awarding alimony is the demonstrated need of the disadvantaged spouse.  **Kinard,** 986 S.W.2d at 235.

The trial court stated three principal reasons for awarding Wife alimony: (1) the fault of Husband; (2) the fact that Wife's employment "prevent[ed]" Husband from paying her periodic alimony; and (3) the need for herself and the parties' children.  We find, however, in reviewing this record, that the evidence preponderates against a finding of Wife's need.  She has a Ph.D. and is gainfully employed, with an income of $40,000 a year.  She has separate assets, which include approximately $10,800 in a certificate of deposit and $1,100 in a savings account.  Furthermore, she is relatively young -- 48 at the time of the divorce -- and there is no indication that she suffers from any significant health problems.  As a result of the division of marital property, she will receive, as she received during their separation, a monthly income from the rental property.  She will also continue to receive dividends from the portion of First Citizens Bank stock awarded to her.  Based upon this evidence, the award of alimony was inappropriate. We find that Wife's retirement account should be equitably divided between the parties.  In keeping with the trial court's division of the other marital assets, Husband should be awarded 37% of the retirement account.

---

[8]In fact, the actual division of assets, excluding Wife's retirement account, comes to a 63-37 percent split in favor of Wife.  As previously indicated, Husband does not challenge the propriety of a 60-40 percent split between the parties, and we do not find that the 63% award to Wife to be a significant deviation from the trial court's stated intention in this case.

We further find and hold that the trial court erred in awarding Wife $3,500 in attorney's fees. "A spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses." *Umstot v. Umstot,* 968 S.W.2d 819, 824 (Tenn.Ct.App. 1997). The record reflects that Wife has adequate means to pay her fees and expenses; as previously indicated, she has separate assets that include $10,800 in a certificate of deposit and a savings account of approximately $1,100. Because we find that Wife is able to afford counsel, this award was also in error.

## VI. *Conclusion*

The judgment of the trial court awarding Wife alimony *in solido* and attorney's fees is reversed. On remand, the trial court will enter an order dividing Wife's retirement in a manner consistent with this Court's opinion. In all other respects, the judgment is affirmed. Costs on appeal are taxed to the parties equally.