IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 9, 2001 Session

## JUDITH R. THOMAS v. WILLIAM A. THOMAS

**Appeal from the General Sessions Court for Roane County**
**No. 324A     Dennis W. Humphrey, Judge**

**FILED OCTOBER 23, 2001**

**No. E2001-00191-COA-R3-CV**

This is a post-divorce proceeding. Judith R. Thomas ("Mother") filed a petition for contempt and for an increase in child support. William A. Thomas ("Father") answered and filed a counterclaim, seeking a decrease in his support obligation. Following a bench trial, the court below determined that while Father had failed to comply with some of the provisions of the parties' marital dissolution agreement ("MDA"), his failure to comply was not willful; therefore, the court declined to hold him in contempt. The court also held that Father's child support obligation should not be changed. Both parties raise issues on this appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Jean Brown, Knoxville, Tennessee, for the appellant, Judith R. Thomas.

Amelia G. Crotwell, Knoxville, Tennessee, for the appellee, William A. Thomas.

## OPINION

### I.

The parties were divorced by final judgment entered on April 2, 1993. They were awarded joint custody of their three minor children: Tracy Lee Thomas, John Anthony Thomas, and Joshua Alden Thomas,[1] with Mother receiving primary physical custody. Pursuant to the parties' MDA, which was incorporated by reference into the final judgment, Father was to pay child support of $620.72 per month. He was also ordered to provide Wife with copies of his future federal income

---

[1]The children's dates of birth do not appear in the record; however, the marital dissolution agreement states that as of February, 1993, the children were 14, 13, and 10 years old, respectively.

tax returns. Mother was ordered to provide health insurance for the children, and the parties were to equally divide any medical or dental expenses not covered by Mother's insurance. Father agreed to pay all unsecured debts incurred during the marriage. Mother was awarded the marital residence, and she assumed the first and second mortgages on the property. Mother agreed to pay Father $12,500 for his share of the equity in the residence, plus interest, to be paid at the rate of $265.60 per month for 60 months. Mother was to satisfy this last obligation by way of a credit to Father's child support obligation.

Post-divorce, on December 6, 1999, Mother filed a petition in the trial court, seeking to increase child support. She alleged that Father's income had increased since the time of the divorce judgment. She also sought a finding of contempt against Father, based upon his alleged willful failure to pay (1) child support from February, 1993, to May, 1994; (2) two credit card bills allegedly incurred during the marriage; and (3) one-half of the children's medical expenses not covered by insurance. In an amended petition, Mother asked the court to punish Father for his "willful" failure to provide her with his annual federal income tax returns. Father opposed Mother's petition and filed a counterclaim seeking a decrease in his support obligation.

The parties' competing claims proceeded to trial on July 14, 2000. By an order entered September 29, 2000, the trial court found that Mother had failed to prove that Father owed a child support arrearage or that the credit card debt attempted to be assigned to Father was in fact incurred during the marriage. The court found that Father had failed to provide copies of his tax returns to Mother and that he owed Mother $332 for his share of an anesthesiologist's bill, but the court refused to hold Father in contempt, finding that his failure to comply with the MDA with respect to these matters was not willful or intentional. Finally, the court concluded that Father's support obligation should remain unchanged.

Mother appeals, arguing (1) that the trial court erred in finding that Father did not owe a child support arrearage; (2) that her claim for back child support is not barred by the doctrine of *res judicata*; (3) that she is entitled to reimbursement for payment of the children's medical expenses not covered by her insurance; (4) that she is entitled to reimbursement from Father for payments made by her on unsecured marital debts; (5) that Father should be found in contempt for his willful failure to follow the trial court's orders; (6) that she is entitled to contractual damages under the MDA for Father's failure to provide his federal income tax returns; and (7) that Father's current child support obligation should be increased. By way of a separate issue, Father argues that his child support obligation should be decreased.

II.

Our review of this non-jury case is *de novo* on the record; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's factual findings. Tenn. R. App. P. 13(d); **Doles v. Doles,** 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the lower court's conclusions of law. **Jahn v. Jahn,** 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

III.

Mother argues that she is entitled to an award of $3,252.82 as a result of Father's failure to pay child support from February, 1993, to May, 1994. At the hearing below, Mother claimed that a previous order, purportedly entered in May, 1999, mistakenly established Father's arrearage at $6,678.70, rather than the correct amount of $9,931.52. While the parties could not locate this order, they agree that the subject order determined Father's arrearage to be $6,678.70. It is undisputed that, following this order, Father made a lump sum payment of $6,898.79 to Mother, which amount satisfied the arrearage established by the order. Based upon the evidence presented, the trial court found that it was "unable to conclude [that Mother] has proven by a preponderance of the evidence [that] an arrearage exists."

The evidence does not preponderate against the trial court's finding that there is no outstanding arrearage. The evidence establishes that Father satisfied the child support arrearage determined in the May, 1999, order by the lump sum payment in September, 1999. If the May, 1999, order precludes Mother from re-litigating the issue of the arrearage up to that point, it is clear that Father has paid any pre-May, 1999, support arrearage.

Mother insists that the prior arrearage was miscalculated and that she is not barred by the doctrine of *res judicata* from challenging the prior determination because, so the argument goes, (1) according to the statement of the evidence, Father's counsel advised the trial court that no order was entered in the prior action and (2) the issue of her overpayment to Father for his share of the equity in the marital residence was not determined in the prior action.

We find that Mother is barred by *res judicata* from re-litigating the issue of the child support arrearage. "The doctrine of *res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." ***Goeke v. Woods,*** 777 S.W.2d 347, 349 (Tenn. 1989) (quoting ***Massengill v. Scott,*** 738 S.W.2d 629, 631 (Tenn. 1987)). Despite the statement of Father's counsel to the contrary, there was sufficient evidence from which the court could and did conclude that an order establishing Father's arrearage was in fact entered in May, 1999. The trial court's order in the instant case indicates that both parties acknowledged the existence of the prior order and stipulated the amount of the arrearage determined in it. As previously indicated, there was clear evidence that after May, 1999, Father made a lump sum payment to satisfy the arrearage found in the 1999 order. Moreover, both parties testified that following the May, 1999, order, Father, who had previously been paying $69.60 per week in support, began paying $115.48 per week. These facts lead us to conclude that an order was entered in which an arrearage was determined and in which Father's ongoing support obligation was modified. Mother's argument with respect to the non-applicability of *res judicata* is found to be without merit. As to Mother's argument that her alleged overpayment of Father's equity was not addressed by the 1999 order, we find that this issue was determined in the prior proceeding. Mother's claim of an overpayment rests upon her theory that Father owed her a larger arrearage than

had been determined in the May, 1999, order. This issue has already been resolved adversely to Mother, and she is barred from re-litigating it now.

## IV.

We next turn to the issue of the medical expenses. Mother presented numerous medical bills to the court below, claiming that Father had not paid his share of those expenses that she claimed were not covered by her insurance. The trial court specifically rejected Mother's claim as to one of these expenses, a $200 charge for glasses, finding that she had failed to provide Father with the bill. It did find, however, that Father had failed to pay his share of a $663 anesthesia bill. As a consequence of this finding, the court ordered Father to pay Mother $332 within 60 days. Mother does not appeal these findings; rather she seeks reimbursement in connection with an orthodontic bill for the parties' second child, John Anthony Thomas, which expense was not specifically addressed by the trial court in its order.

The evidence reflects that the orthodontic bill totaled $2,187. Over one-half of this bill – $1,141.50 – was paid through insurance carried by Father's current wife, Sheila Thomas. The remainder of the bill was paid by Mother. The MDA provides that the parties "will equally divide any medical, hospital, and dental expenses *not covered by [Mother's] insurance*." (Emphasis added). None of the orthodontic bill at issue was paid by Mother's insurance; as indicated, the evidence clearly reflects that insurance procured by Father's current wife paid for more than half of this expense. The MDA does not provide that the parties are to divide expenses not covered by *anyone's* insurance, only Mother's. Because Mother's insurance did not cover any of the bill, the parties were obligated to divide it equally between them, which it appears they did. The fact that Father's share was paid through insurance provided by his current spouse is not material. In equity, Husband is entitled to claim the payment by his current wife's insurance as his own. Mother's argument is without merit.

## V.

Next, Mother contends that she is entitled to reimbursement from Father for $2,656.02 in unsecured credit card debt allegedly incurred during their marriage and paid by her following their divorce.

At the trial below, Mother submitted two credit card statements with payment due dates of October, 1994, showing balances totaling $2,656.02. Mother also submitted checks that she had written for payments on these obligations following the divorce. Both parties testified that the credit cards in question were used to purchase furniture for the marital residence in 1990, prior to the parties' separation. Mother further testified that no additional charges had been made to these cards since the parties' separation.

The trial court found that Mother had failed to prove that the credit card debt of $2,656.02 was marital debt:

> [T]here is no proof of the amount of the debts at the time of the parties' divorce, or whether one of the parties created additional debts thereon afterwards. In fact, it appears, due to a cash advance on the statement first listed above, that [Mother] continued to make use of that account after the divorce.

The trial court was not presented with any documentary evidence to establish the amount due on these credit cards *at the time of the parties' divorce*. In the absence of such evidence to establish the amount of the debt at that time, the trial court was left only with the testimony of Mother, who asserted that she had not incurred any more charges on the cards since the divorce. The trial court noted, however, that one of the 1994 credit card statements reflected charges for a cash advance, which indicated to the court that at least one of the cards was used for more than the purchase of furniture. For this reason, it appears that the trial court discredited Mother's testimony that these debts were marital. The trial court's credibility determinations are entitled to great weight on appeal. *Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Bowman v. Bowman,* 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). In fact, this Court has noted that "on an issue which hinges on witness credibility, [the trial judge] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Tennessee Valley Kaolin Corp. v. Perry,* 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). Having found no "clear, concrete and convincing evidence" that the debts owed as of October, 1994 – which date is some 19 months post-divorce – were marital, we affirm the trial court as to this issue.

## VI.

Mother asserts that the trial court erred in refusing to hold Father in contempt for his failure to comply with the parties' MDA.

The trial court found that Father had failed to pay his share of an anesthesia bill and that he had failed to provide Mother with copies of his federal income tax returns. The trial court declined to hold Father in contempt, however, finding that his conduct was not willful. Determinations regarding contempt lie within the trial court's sound discretion and are final, absent any plain abuse of that discretion. *Hawk v. Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993); *Sherrod v. Wix,* 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). Upon reviewing the record, we cannot say that the trial court abused its discretion in refusing to find Father in contempt. This issue is found adversely to Mother.

## VII.

Mother argues that she is entitled to an award of compensatory damages for Father's breach of the MDA in failing to provide her copies of his tax returns for the years 1995 to 1999. She asserts that such damages should be based upon the difference between Father's actual child support obligation during that time and the amount he would have been required to pay according to his gross income reported on these returns.

Mother has cited no authority, nor are we aware of any, to support an award of compensatory damages for this type of breach of a MDA. Moreover, we note that in seeking these damages, Mother is in essence requesting a retroactive modification of Father's child support obligation for the four years prior to the filing of her December, 1999, petition. A child support judgment may not be modified "as to any time period or any amounts due prior to the date that an action for modification is filed...." T.C.A. § 36-5-101(a)(5) (Supp. 2000). Accordingly, Mother may not do indirectly what she is precluded from doing directly, that is, obtain a retroactive modification of Father's child support obligation for the years prior to the filing of her petition. We find this issue to be without merit.

VIII.

Finally, each of the parties seeks to modify the current order setting child support. The trial court denied each party's request, noting in its order that both parties relied on financial data purportedly contained in responses to interrogatories – responses that were not admitted into evidence. We find no error in the trial court's judgment which is essentially based upon a failure of proof.

Father makes a novel argument. He contends that since there is no proof regarding his net income – because of the absence in the record of the responses to interrogatories – the trial court should set child support based upon an imputed annual income of $25,761. He takes this position because such an imputed income would produce a child support obligation that is *less* than the current order.

There are at least two reasons why such an approach is not appropriate. First, the claimed basis for Father's argument is Tenn. Comp. R. & Reg. Ch. 1240-2-4-.03(3)(e), a part of the Child Support Guidelines that specifically limits its application to the "establish[ment] [of] an *initial* order" of support. *Id*. (Emphasis added). The instant case is a modification case controlled by Tenn. Comp. R. & Regs. Ch. 1240-2-4-.03(3)(f). The application of the latter regulation does not produce a lower award of child support. Accordingly, it provides no basis for Father's attempt to modify his child support. Furthermore, even if this were an appropriate case to impute income, we would not be inclined to impute such income when to do so is to lower the child support obligation of one who has failed to produce the necessary documentation to establish his net income for the purpose of the Guidelines.

We find no error in the decision of the trial court not to adjust Father's child support obligation.

-6-

IX.

The judgment of the trial court is affirmed.  This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed to the appellant, Judith R. Thomas.


_____
CHARLES D. SUSANO, JR., JUDGE